DAVID S. McLANE, SBN 124952
Email: dmclane@mbllegal.com
LINDSAY BATTLES, SBN 262862
Email: lbattles@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

*Attorneys for Plaintiff*
GENESIS PRECIADO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENESIS PRECIADO,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN RUSSELL BELLHOUSE; RAY J. GARCIA, and DOES 1 TO 10, inclusive<br><br>    Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>***BIVENS* CLAIM - VIOLATION OF CONSTITUTIONAL RIGHTS UNDER EIGHTH AMENDMENT**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. This is a civil action brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("Bivens") concerning sexual abuse of a prison inmate at the Federal Correctional Institute/Federal Correctional Camp in Dublin, California.

2. Plaintiff Genesis Preciado asserts this claim based on the outrageous sexual abuse she endured by former Bureau of Prisons officer, Officer John Bellhouse, a prison safety administrator, at the Bureau of Prison's ("BOP's") all-female Federal Prison Camp in Dublin, California ("FPC Dublin"). The Dublin, California Federal Corrections Institute ("FCI-Dublin") is a low security federal correctional institution with an adjacent minimum security satellite camp for female offenders. The abuse occurred between approximately August 2020 and October 2020. Ms. Preciado remained incarcerated until January 2021, at which time she was released. She has filed an Administrative Claim under the Federal Tort Claims Act against the Federal Bureau of Prisons, which is pending.[1]

3. During all times relevant to this complaint, Officer Bellhouse, Officer Kingler, Warden Ray Garcia, and other BOP employees, including Officer James Townsend, Chaplain Hightower, and Officer Bell, fostered a culture of rampant sexual abuse of prisoners widely referred to as "the rape club." The culture, custom and policies of rape, sexual abuse and sexual harassment at FCI-Dublin and FCP Dublin, were enabled by the highest levels of staff, including but not limited to Warden Ray Garcia, who not only condoned it, but participated in it, and was a moving force in the illegal conduct committed by John Bellhouse against Genesis Preciado.

---

[1] If the Federal Tort Claims Act administrative claim arising out of the same operative acts as this *Bivens* lawsuit is denied, Plaintiff will either seek leave to amend this lawsuit, or file a separate lawsuit and seek to join the two lawsuits before the Federal District Court judge assigned to this case.

## II.　　JURISDICTION AND VENUE

4.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights jurisdiction).

5.　　Venue is appropriate in this Court under 28 U.S.C. §1391(b)(2) as all of the events or omissions giving rise to the claim occurred at the Federal Correctional Institute of Dublin, California, which is located in Alameda County, within the Northern District.

## III.　　PARTIES

6.　　Plaintiff Genesis Preciado ("Plaintiff" or "Ms. Preciado") was at all times relevant to this Complaint, an inmate at the Bureau of Prison's all-female Federal Prison Camp in Dublin, California. Ms. Preciado is no longer incarcerated. She was released from FCI-Dublin to a halfway house in January 2021. Ms. Preciado was only 21 years old when the abuse began.

7.　　Defendant John Russell Bellhouse ("Defendant" or "Defendant Bellhouse") was, at all times relevant to this Complaint, employed by the BOP as an officer at the Federal Correctional Institute of Dublin and adjacent prison camp (FPC Dublin). Officer Bellhouse worked as the prison's safety administrator until he was placed on leave in March 2021. As a guard at a BOP facility, Bellhouse was in a position of power with respect to all female inmates. He knew it violated official written BOP policy and the law to sexually harass and abuse female inmates. Defendant Bellhouse was approximately 39 years old during the events relevant to this case.

8.　　Defendant Ray J. Garcia ("Garcia" or "Defendant Garcia") was, at all times relevant to this Complaint, employed by the BOP as first the Associate Warden in charge of operating the Federal Correctional Institute ("FCI") of Dublin and

adjacent prison camp ("FPC Dublin"), and administering the Prison Rape Elimination Act ("PREA") program, designed to eliminate the sexual abuse and harassment of inmates in federal prison. He then became Warden of FCI Dublin and FPC Dublin where the sexual abuse of Plaintiff occurred. As the Associate Warden and Warden of FCI Dublin and FCP Dublin, Defendant Garcia was in charge of ensuring female inmates were not abused by male guards and was specifically in charge of their training and discipline to prevent the sexual abuse of female inmates. He was personally involved in the sexual abuse of the female inmates, including Plaintiff, because through his actions, where he personally sexually abused female inmates, and personally initiated the practices and customs that resulted in the Dublin "rape club", and his failure to train, supervise and discipline his subordinates who he know were abusing female inmates, he is personally liable and responsible for the abuse of female inmates at Dublin, and specifically Plaintiff. Plaintiff is informed and believes and thereon alleges that Garcia was aware of Bellhouse's abuse of Plaintiff. As the Warden at a BOP facility, Garcia was in a position of power with respect to all female inmates and was specifically in charge of Bellhouse and failed to supervise, train and discipline him and other guards who sexually abused the inmates, including Bellhouse's abuse of Plaintiff. He was personally involved in the sexual abuse of Plaintiff by Bellhouse as Bellhouse' supervisor.

9. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages set for herein.

///

## IV. FACTS

10. As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact with a correctional officer. In 2003, Congress unanimously enacted the Prison Rape Elimination Act (PREA) and declared "the prevention of prison rape a top priority in each prison system," 34 U.S.C. §30301(2). Despite the BOP's responsibility to enforce a "zero-tolerance standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §30301(1), the culture of sexual abuse at FCI and FCP Dublin was so pervasive that the facility has been referred to as the "rape club." BOP, FCI-Dublin and FCP Dublin failed to implement necessary and feasible protections for prisoners, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound supervision, and appropriate training, supervision, and discipline. The very officers who were responsible for preventing and remedying sexual abuse were themselves serial sexual predators.

11. Defendant Ray Garcia was in charge of FCI-Dublin and FCP Dublin first as Associate Warden with the responsibility of administering the PREA program, and then as Warden of FCI-Dublin and FCP Dublin during the time Plaintiff Genesis Preciado was serving her sentence at FCI-Dublin and FCP Dublin. Defendant Garcia and other BOP officers including Bellhouse were members of the FCI-Dublin and FCP Dublin "rape club", which is what the BOP officers who sexually assaulted the female inmates at Dublin were called. Garcia and the Dublin leadership **tolerated** and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape and abuse inmates without consequence. Although the first complaints of sexual abuse surfaced in 2017, five years ago, Garcia, and the leadership of FCI-Dublin and FCP Dublin permitted abusive conditions to continue, thereby creating customs and practices of sexual harassment, abuse and rape by prison officials that included those at the highest levels of command, Garcia. It did not matter what the written policies were

because embedded in FCI-Dublin and FCP Dublin were these sexual abuse practices that became the policy of the prison. Prisoners who reported sexual abuse were ignored, threatened or retaliated against with solitary confinement or loss of favorable job assignments. Prison officials expressly advised one victim that they would take no action in response to her report because it was a "he-said-she-said" scenario. The policy, custom and practices that directly violated PREA and were implemented by Garcia where he knew other guards were sexually abusing inmates gave implicit permission to officers such as Bellhouse to abuse female inmates including Plaintiff.  Garcia's involvement in the "rape club" and his personal knowledge and approval of the BOP officers' sexual abuse of female inmates, and his role as supervisor and boss of Bellhouse, was a moving force in Bellhouse's abuse of Plaintiff, and establish Garcia's personal involvement in Plaintiff's sexual abuse and harm. Further, Plaintiff is informed and believes and thereon alleges that Garcia was aware of Bellhouse's sexual abuse of female inmates, including Plaintiff.

12.  Plaintiff Genesis Preciado was originally designated to serve her sentence at FPC Dublin and began service of her two-year sentence in January 2020. When the Covid-19 outbreak occurred, she was transferred to FCI-Dublin for approximately three months. She was transferred back to the FPC Dublin in the summer of 2020, and the sexual harassment and abuse occurred while serving her sentence at FPC Dublin.

13.  In summer 2020, Ms. Preciado was assigned to the recycling unit at the FPC Dublin facility. Bellhouse managed the recycling unit, and Ms. Preciado worked in that unit, which enabled Bellhouse to have almost daily contact with her, as her direct work supervisor. Another guard, Officer Klinger, told Ms. Preciado to work in recycling which Bellhouse controlled.  Ms. Preciado is informed and believes she was assigned to the recycling unit so that Bellhouse could abuse her.

14.  Defendant Bellhouse showed an inappropriate interest in Ms. Preciado soon after she was assigned to the recycling unit. He initiated a course of "grooming" conduct

to seduce, manipulate and control Ms. Preciado, so he then could engage in illegal sexual conduct with her. Bellhouse would go out of his way to talk to her in the recycling unit. Bellhouse would tell other inmates to tell Ms. Preciado that she was pretty, and the inmates told her to be "nice" to Bellhouse so that the inmates and Ms. Preciado would get favors and privileges from Bellhouse. In the fall of 2020, Ms. Preciado was in the recycling office with Bellhouse, at his direction, and he gave her an energy drink. He told her that she was "pretty", and that he "liked" her, and that when he "went home instead of watching porn he thinks of doing things to her." Ms. Preciado felt uncomfortable immediately. He tried to rub her during this incident and rubbed her with his hand on her lower back and buttocks over her clothes and then moved to the other side of her buttocks.

15. On a second occasion in the fall of 2020, Bellhouse invited Ms. Preciado into the office to "discuss" work. He grabbed her breasts and put his hands on her inner thighs near the vaginal area. Ms. Preciado felt extremely uncomfortable. She pushed his hand away.

16. Other female inmates told Ms. Preciado to do what Bellhouse wanted because he would give favors to the inmates and Ms. Preciado. She felt pressured by the inmates and Bellhouse, and as a result, wrote some letters to Bellhouse that the United States Attorney now possesses where she asked for some yarn so she could knit. She never received yarn or any other requested items.

17. On a third occasion in October 2020, Bellhouse was opening a gate for her, and he pressed up against her and pushed his penis against her buttocks. Ms. Preciado became upset and told him to stop.

18. On a fourth occasion, October 8, 2020, Bellhouse and Ms. Preciado were alone in his office, and he had Ms. Preciado sit on his desk. He grabbed her breasts and put his hands on her inner thighs near the vaginal area. Ms. Preciado felt extremely uncomfortable. She pushed his hand away and told him she did not want him touching her in those areas. He asked why she wanted to stop and brought up the items she had

requested in notes. Ms. Preciado reiterated that she did not want him to touch her. When she left the recycling unit, one of the other female inmates told her that Bellhouse told the other inmates to stay outside of the unit while he was in there with Ms. Preciado.

19. After this fourth occasion, Ms. Preciado avoided Bellhouse. She still saw Bellhouse, but she felt extremely uncomfortable around him.

20. All of these encounters were offensive and unwelcome. Ms. Preciado was very uncomfortable with the coercive dynamic. Despite her significant discomfort, she felt powerless to report him. Ms. Preciado was aware that Bellhouse had disciplinary control over her, as well as access to highly confidential information. Bellhouse knew she lived in Los Angeles so he did access her confidential file, which could easily jeopardize her safety by disclosing confidential information to other inmates about her. When the abuse occurred, she had almost completed her sentence. She was concerned that she would lose her good time credits and/or face disciplinary retaliation for accusing him of harassment and sexual abuse, even though it was true.

21. Ms. Preciado was also deterred from reporting by the sexually abusive and harassing culture at FCI-Dublin and FPC Dublin, where the Defendant Garcia and the Dublin leadership **tolerated** and encouraged sexual harassment and sexual abuse by permitting predatory employees to harass, rape and abuse inmates without consequence. At the time of these events, the facility was run by Defendant Associate Warden and Warden Garcia, who implemented an unwritten policy, custom and practice of sexually harassing, abusing, and even raping female inmates. Bellhouse, in sexually harassing and abusing Ms. Preciado, even though he knew he was violating the law and official BOP policy, knew that he would not suffer any consequences or discipline from BOP management or Associate Warden/Warden Garcia. Indeed, to this date, there have been several BOP officials and employees who have been charged by the U. S. Department of Justice for their inappropriate conduct at Dublin, including Associate Warden/Warden Garcia, James Theodore Highhouse, a corrections worker and chaplain, Bellhouse, and Ross Klinger, a recycling technician at the prison who worked with Bellhouse. Garcia

is directly responsible for Bellhouse' sexual abuse of Plaintiff as his boss and supervisor, with personal knowledge of the sexual abuse of female inmates as Associate Warden and Warden, and his participation in the rape club and failure to train, supervise and discipline members of the rape club which caused and was a moving force in the sexual abuse of Plaintiff by Bellhouse. Plaintiff is informed and believes and thereon alleges that Garcia was aware of Bellhouse's abuse of female inmates including Plaintiff.

22. The FBI and U.S. Attorney contacted Ms. Preciado in the summer of 2021. She was questioned about Bellhouse and his sexual abuse and harassment of Ms. Preciado, and Ms. Preciado was subpoenaed and testified before the grand jury as to what Bellhouse did to her on August 18, 2022, in Oakland, California.

23. Defendant Bellhouse has been charged by the U.S. Department of Justice with having sexual encounters with three women at FCI-Dublin. His conduct with Ms. Preciado was a part of a pattern and practice with FCI-Dublin and FCP Dublin employees involved in sexually harassing and abusing women inmates, and his own pattern and practice.

24. Defendant Garcia was charged by the U.S. Department of Justice with having sexual encounters with female inmates at FCI-Dublin, and was convicted of such encounters on December 8, 2022. He is currently awaiting sentencing.

25. It is illegal and a crime for any prison staff to have consensual or non-consensual sexual contact with any prisoner. Bellhouse was well aware of the law, and despite his knowledge, and enabled by the "rape club" and the customs and policies of FCI-Dublin and FCP Dublin, he engaged in illegal sexual contact of Ms. Preciado.

26. In 2003, Congress unanimously enacted the Prison Rape Elimination Act (PREA) and declared "the prevention of prison rape a top priority in each prison system," 34 U.S.C. §30301(2). Despite the BOP's responsibility to enforce a "zero-tolerance standard for the incidence of prison rape in prisons in the United States" 34 U.S.C. §30301(1), the culture of sexual abuse at FCI-Dublin and FCP Dublin was so

pervasive that the facility has been referred to as the "rape club." BOP and FCI-Dublin and FCP Dublin failed to implement necessary and feasible protections for prisoners as required by PREA, including a viable mechanism for reporting sexual abuse, continuous direct sight and sound supervision, and appropriate training, supervision, and discipline, and specifically, not enacting an unwritten policy, custom and practice of rampant sexual abuse and harassment by the guards and their supervisors with the power and obligation to prevent it. The very officers who were responsible for preventing and remedying sexual abuse were themselves serial sexual predators.

27. Plaintiff Preciado submitted an Administrative Claim to the Federal Bureau of Prisons on or about October 5, 2022. Ms. Preciado will amend this complaint to add claims under the Federal Tort Claims Act when the claims become ripe.

## V. Damages

28. Plaintiff was physically, mentally and emotionally injured as a direct and proximate result of Defendant's actions.

29. Plaintiff is entitled to recover damages pursuant to the pain and suffering and mental trauma she endured as a result of her rights being violated.

## VI. CLAIMS FOR RELIEF

**First Claim For Relief:  *Bivens* Cause of Action for Violation of the Eighth Amendment**

*Against Officer John Bellhouse*

30. Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

31. At all relevant times, Defendant Bellhouse was acting under the color of federal authority.

32. Under the Eighth Amendment of the United States Constitution, Plaintiff has a constitutionally protected right to be free of cruel and unusual punishment. Sexual abuse of a prisoner is a violation of the Eighth Amendment of the Constitution.

33. As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact, harassment and abuse by a correctional officer. Ms. Preciado did not consent to any of the sexual contact initiated by Defendant Bellhouse, all of which was unwelcome.

34. Bellhouse knew his conduct was prohibited as he did his sexual abuse behind closed doors in his office in the recycling unit, without other supervisors present.  He knew it was prohibited by his PREA training, but it was also condoned by FCP Dublin's "rape club" and unwritten custom and practice of sexual harassment and abuse. Ms. Preciado in informed and believes that Bellhouse was advised, as part of his training, that he could not maintain inappropriate relationships with prisoners, which included becoming emotionally, sexually, romantically, or financially involved with prisoners or former prisoners.

35. Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed.

36. The actions, conduct and omissions of Defendant Bellhouse violated the rights of Plaintiff Preciado under the Eighth Amendment to the United States Constitution.

**Second Claim for Relief:  *Bivens* Cause of Action for Violation of the Eighth Amendment**

*Against Warden Ray J. Garcia*

37. Plaintiff realleges all foregoing and subsequent paragraphs as if fully set forth therein.

38. At all relevant times, Defendant Garcia was acting under the color of federal authority.

39. Under the Eighth Amendment of the United States Constitution, Plaintiff has a constitutionally protected right to be free of cruel and unusual punishment. Sexual abuse of a prisoner is a violation of the Eighth Amendment of the Constitution.

40. As recognized by federal law, there is no scenario in which an inmate can give consent to sexual contact, harassment and abuse by a correctional officer. Ms. Preciado did not consent to any of the sexual contact initiated by Defendant Bellhouse, all of which was unwelcome.

41. As alleged above, Defendant Garcia was personally involved in the sexual abuse of Plaintiff by Bellhouse because he implemented the practices, customs and policies known as the "rape club" which instigated BOP officers such as Bellhouse to sexually abuse inmates like Garcia did.  Bellhouse knew his conduct was prohibited, but he knew that Garcia condoned it and the "rape club" of which Garcia was the founding member, would not punish him for his sexual abuse.  Garcia who had the power to discipline, including terminate, sexual abusers such as Bellhouse, failed to stop Bellhouse's and other BOP officers' sexual abuse of female inmates, and failed to train, and supervise such officers in his supervisorial capacity which would have prevented the sexual abuse of Plaintiff and other female inmates. Garcia, through his own sexual abuse of female inmates, his implementation of illegal practices to sexually abuse and harass inmates without regard to the safety and welfare of the female inmates, and his knowledge that other BOP officers were sexually harassing and abusing inmates and his approval of such conduct, was personally involved in the sexual harassment and abuse of the female inmates at Dublin including Plaintiff. Further, Plaintiff is informed and believes and thereon alleges that Garcia was aware of Bellhouse's sexual abuse of female inmates, including Plaintiff.

42. Plaintiff lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful remedy, and an appropriate remedy, namely damages, can be imposed.

43. The actions, conduct and omissions of Defendant Garcia violated the rights of Plaintiff Preciado under the Eighth Amendment to the United States Constitution.

## VII.   REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests:

A. Compensatory damages as to Defendant Bellhouse and Garcia;

B. Punitive damages as to Defendant Bellhouse and Garcia;

C. Reasonable attorneys' fees and costs; and

D. Such other and further relief as may appear just and appropriate.

## VIII.   JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED:   December 23, 2022         McLane, Bednarski & Litt, LLP

By: /s/ David S. McLane
David S. McLane
Lindsay Battles
Attorneys for Plaintiff
GENESIS PRECIADO